## Metropolitan Bank of Minneapolis v. Northern Fuel Company.

1. CONSTRUCTION—*Of Contracts.*—It is a rule, equally of morals and
law, that a party's promise or offer is to be construed, if consistent with
its terms, in the sense in which he must have believed that the party to
whom it was made understood it.

2. ESTOPPEL—*By Retaining the Contents of a Letter.*—If a letter and the
terms of a receipt which it incloses are unsatisfactory and not in accord-
ance with the understanding of the recipient as to the agreement of the
parties, he may return the letter and its contents, but if he appropriates
the contents, he can not evade the terms either of the letter or the in-
closed receipt.

**Attachment.** Appeal from the Superior Court of Cook County; the
Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in this court at the
October term, 1897. Affirmed. Opinion filed January 17, 1898.

SWIFT, CAMPBELL & JONES, attorneys for appellant.

ULLMANN & HACKER, attorneys for appellee.

MR. JUSTICE ADAMS DELIVERED THE OPINION OF THE
COURT.

Appellee sued the appellant in attachment, and filed
a declaration in assumpsit, alleging, in substance, an
agreement between the plaintiff and defendant for the

sale by defendant to plaintiff of bonds of the Lehigh
Coal and Iron Company of the face value of $2,200, to
be delivered to the plaintiff by the defendant within
eighteen months from the date of said agreement, upon
payment by the plaintiff to the defendant of the sum
of $2,200; that the plaintiff had paid said sum to the
defendant, but defendant had refused to deliver the
bonds, etc. The declaration also contained the common
counts. The defendant filed the general issue and two
special pleas, setting up a different contract in reference
to bonds of the Lehigh Coal and Iron Company, and
claming damages, etc. The Lehigh Coal and Iron Com-
pany in December, 1893, was in the hands of a receiver;
L. R. Doty, the president of that company, was the re-
ceiver, and was anxious to bring about a settlement with
the creditors of the company, and to effect a reorganiza-
tion of the company. The Metropolitan Bank of Min-
neapolis, appellant, was one of the creditors of the
Lehigh Company, and there had been negotiations for
a settlement between L. R. Doty and James T. Wyman,
the president of the bank, of the claim of the bank
against the Lehigh Company, when December, 16,
1893, Doty sent to Wyman the following letter:

"MINNEAPOLIS, MINN., Dec. 16, 1893.
"J. T. Wyman, Pres. Metropolitan Bank, Minneapolis,
　　Minn.:
　"DEAR SIR:—I hereby agree that if the proposed
agreement of the Lehigh Coal & Iron Co. is signed,
and the receiver discharged to buy 1–2 the bonds issued
to you, giving you a 60 day note of the Northern Fuel
Co., indorsed by J. D. Hurd and myself for 10 per
cent of the amount of your bonds, and 3 notes for 1–3
each of 1–2 the amount of your bonds at 6, 12 and 18
months, the notes to bear 8 per cent interest. I also
agree that the Lehigh Coal & Iron Co. shall carry an

average balance with your bank or pay the interest on the balance of bonds to make it equal to 8 per cent.

"Yours respectfully,

"L. R. DOTY.

"PS.—It is understood that your bank is to hold all the notes and bonds until these notes are paid, crediting any collections on notes indorsed by L. C. and I. upon the half of the bonds not purchased."

No answer was returned to the above letter, and afterward, and at the date thereof, appellee sent to the bank the following:

"CHICAGO, Dec. 26th, 1893.

"Metropolitan Bank, Minneapolis, Minn., J. T. Wyman, President:

"DEAR SIR:—In consideration of one dollar to us in hand paid, which we hereby acknowledge receipt of, and other valuable considerations, we agree to buy one half of the bonds issued to you by the Lehigh Coal & Iron Company in settlement of your claim against them, and to pay for the same as follows: Note of this company at sixty days, for ten per cent of the entire amount of the bonds issued to you by the Lehigh Coal & Iron Company, three equal notes at six, twelve and eighteen months for the balance of one-half of said bonds, you to hold all of the bonds purchased under this agreement until all of said notes are paid.

"NORTHERN FUEL COMPANY,

"By C. COHENOUR, Sec'y and Treas.

"For valuable considerations we hereby agree to indorse the above notes.

"L. R. DOTY.

"J. D. HURD."

No answer to the last letter appears to have been received by appellee, and March 27, 1894, appellee wrote to appellant inclosing a check and notes mentioned in

the letter, and also an unsigned receipt to be signed by appellant, which letter and receipt are as follows:

"CHICAGO, March 27th, 1894.

"Metropolitan Bank, Minneapolis, Minn.:

"GENTLEMEN:—Inclosed please find our notes to your order, all due at our office in Chicago, all dated December 30th, 1893, and indorsed by L. R. Doty and J. D. Hurd, as follows:

"At 6 months, $590.

"At 12 months, $590.

"At 18 months, $590.

"Also our check on the Globe National Bank of Chicago for $430, total $2,200, in payment for the $2,200 worth of bonds of the Lehigh Coal & Iron Company, purchased from you as per agreement of December 26th, 1893. Kindly sign the inclosed receipt for the same and return to us.

"Yours truly,

"NORTHERN FUEL COMPANY,

"C. COHENOUR, Treas."

Plaintiff offered in evidence receipt referred to in above letter, as follows:

"Received of the Northern Fuel Company the following notes made by the Northern Fuel Company to the order of the Metropolitan Bank of Minneapolis, Minnesota, dated December 30th, 1893, due at the office of the Northern Fuel Company, Chicago, Illinois, and indorsed by L. R. Doty and J. D. Hurd:

"At 6 months $590,

"At 12 months $590,

"At 18 months $590, .

and check of the Northern Fuel Company on the Globe Nat'l Bank of Chicago to the order of the Metropolitan Bank for $430, total $2,200, in payment for $2,200 of the bonds of the Lehigh Coal and Iron Company of St. Paul, Minn., purchased of the Metropoli-

tan Bank of Minneapolis, Minn., according to the terms of a certain agreement for the purchase of the same made December 26th, 1893, between the Metropolitan Bank and the Northern Fuel Company, in ac_ cordance with which agreement the deposit of the bonds above mentioned is hereby acknowledged by the Metropolitan Bank to be held by them as collateral security for the payment of notes above mentioned, with the understanding and agreement that the Metropolitan Bank is to collect the interest on the bonds above mentioned as it matures, and to apply the proceeds thereof to the reduction of the notes next thereafter maturing. The Metropolitan Bank is to hold all of the bonds above mentioned until all of the above notes are paid, when they are to deliver the same to the Northern Fuel Company.''

Appellant received the last letter with its inclosures, and collected the amount of the check, and received from appellee payment of the notes due in six and twelve months, respectively. Appellant did not sign or return the receipt inclosed to it in the last letter, nor, so far as appears from the evidence, did it answer the letter. The claim of the bank against the Lehigh Coal & Iron Co. was about $19,686.74, and was on account of paper discounted for the company, but the bank, not thinking it desirable that it should appear in the receivership proceedings that it had loaned so large an amount to the company, on April 28, 1893, transferred to J. H. Martin, one of its directors, four notes, indorsed to it in blank by the Lehigh Coal and Iron Co., which notes represented part of the indebtednes of the latter company to the bank; the aggregate amount of which notes so transferred was $14,575.89. The balance of the indebtedness, $4,810.95, the bank retained in its own name, and took a note from Martin for the amount of the

four notes transferred to him.  Martin filed a claim with the receiver in his own name, for the amount of the notes transferred to him, $14,575.89, and May 17, 1894, after a settlement had been effected with creditors to which he, Martin, had consented, he directed bonds to the amount of $13,500 to be issued to the bank on account of his claim.  In addition to the bonds so issued, Martin received a check, payable to his own order for $1,530.72.  The bank proved up and filed with the receiver, in its own name, its claim for $4,810.85, which was satisfied by payment of ten per cent in cash and the remainder in bonds of the Lehigh Coal & Iron Co.  The bonds in question were issued December 30, 1893, and were a part of $800,000 of bonds issued at that date for the purpose of discharging the debts of and reorganizing the company.  There is no evidence that the appellee, or any of its officers, knew that the claim filed in Martin's name was, in fact, the claim of the bank, and Cohenour, appellee's secretary and treasurer, who conducted the negotiations on behalf of appellee, says he did not know it.

Appellee having paid to appellant the first and second notes mentioned in its letter of March 27, 1894, wrote to appellant the following letter:

"Chicago, April 17, 1895.

"Metropolitan Bank, Minneapolis, Minn.:

"Gentlemen:    Referring to our note in your favor due July 3, 1895, for $590, being the last note given to you on the purchase of $2,200 worth of L. C. & I. Co. bonds, purchased from you as per agreement of December 26, 1893, I beg to inquire what you propose to do in reference to this matter, and make this inquiry at this early date so as to be advised of your decision before the note becomes due.  On December 22, 1894, we tendered you through Mr. F. L. Jackson, agent of the Lehigh Coal & Iron Co., at Minneapolis, payment

for the above note (in addition to a payment for the note due January 2, 1895), which payment you declined to receive, claiming that it was not according to agreement; and Mr. Jackson advised us at that time that you would take the matter up with us. We have had no word from you, and it looks as if you did not intend to stand by the agreement. If this is the case it will be better for us not to pay the above note. If, however, you have investigated the matter further, and your figuring of the agreement agrees with ours, we will be glad to take up the note before its maturity, and clean the matter entirely up. Kindly give this matter your early attention and let us hear from you, and oblige,

"Yours truly,

"THE NORTHERN FUEL Co.,

"C. COHENOUR, Treas."

To the last letter appellant replied as follows:

MINNEAPOLIS, MINN, April 26, 1895.

"Northern Fuel Co., Chicago, Ill.:

"GENTLEMEN:—Answering your favor of April 17th, I will say that we shall carry out our contract with Mr. Doty to the letter, and shall expect you to pay your note for $590 at maturity, or before, if you see fit.

"Yours truly,

"E. R. GAYLORD, Cashier."

On the maturity of the eighteen months note mentioned in the letter of March 27, 1894, it was presented to appellee's treasurer, Mr. Cohenour, for payment. The bonds issued by the Lehigh Coal & Iron Co. bore interest at the rate of six per cent per annum, payable semi-annually, and appellant had, when the note was presented as stated, collected on $2,200 of bonds the sum of $198 interest, and Mr. Cohenour tendered in payment of the note the sum of $392 in gold, this being the difference between the amount of the note, $590 and $198, the interest collected by appellant,

which amount so tendered appellant refused to receive, and also refused to deliver the bonds.

Appellant's counsel contend that appellee's contract was to purchase the one-half of all the bonds issued by the Lehigh Coal & Iron Company to appellant in settlement of its claim, and that as there were bonds to the amount of $17,800 so issued, appellee has not performed its contract, and can not recover. This contention is not supported by the evidence, which shows that April 28, 1893, about eight months prior to December 26, 1893, the date of appellee's first communication to appellant, appellant had transferred to its director, Martin, the legal title to all of its claim except the sum of $4,810.85, so that when the offer of appellee of December 26, 1893, was made, to purchase from appellant half the bonds to be issued to it in settlement of its claim, its legal claim was only for $4,810.85. The evidence clearly shows that although as between appellant and Martin, the claim filed by the latter in his own name was really appellant's claim, in which Martin had no substantial interest, yet the arrangement between appellant and Martin was a secret arrangement, and that appellee had no knowledge of it whatever, and acted in the belief that the claim filed in appellant's name was its only claim. This is evidenced by appellee's letter to appellant of date March 27, 1894, which letter and the conduct of appellant in respect to it, we think conclusively against the proposition that appellee's agreement was to purchase more than $2,200 worth of bonds. There is no evidence that appellant ever accepted or responded in any way to the letter of December 26, 1893, or that it took any action in respect thereto. It received the letter of March 29, 1894, in which the agreement is distinctly expressed to be to purchase $2,200 worth of bonds, and could not possibly have been understood by appellant in any other way.

It is a rule equally of morals and law, that a party's promise or offer is to be construed, if consistent with its terms, in the sense in which he must have believed that the party to whom it was made understood it. County of Clinton v. Ramsey, 20 Ill. App. 577; Wells v. Carpenter, 65 Ill. 447.

The letter of March 27 refers to that of December 26, 1893, thus evidencing what appellee at that date understood to be appellant's claim against the Lehigh Coal & Iron Co., and when appellant appropriated to its own use the check and notes contained in the March 27th letter, it thereby agreed to the construction given by that letter to the offer of December 26, 1893. If the March letter and the terms of the receipt which it referred to and inclosed were unsatisfactory to appellant, and not in accordance with its understanding of the agreement between the parties, it might have returned to appellee the letter and its contents, but having appropriated its contents, it can not now evade the terms either of the letter or the inclosed receipt. Ostrander v. Scott, 161 Ill. 339, 344-5.

Appellant's letter of April 26, 1895, purporting to be an answer to appellee's letter of April 17, 1895, was a *non sequitur* and an evasion. The writer of the letter, appellant's president, says: "I will say that we shall carry out our contract with Mr. Doty to the letter," etc. It does not appear from the evidence that appellant ever accepted Mr. Doty's offer of December 16, 1893, or that there was any agreement between him and appellant for the purchase by him of bonds from appellant; and even had there been, it could not in any way affect appellee's rights. The question was as to the contract between appellant and the Northern Fuel Company, and the evidence fails to show that Mr. Doty had the least interest in that company or in its contract with appellant.

It is further contended on behalf of appellant, that appellee, when its last note for $590 was presented for payment, did not tender the full amount then due, even on the hypothesis that appellee purchased only $2,200 worth of bonds. The only objection to the tender made by appellant's counsel in their argument, is that it was not of sufficient amount. The note was for $590, without interest, and matured July 3, 1895, when the tender of $392 in gold was made by appellee. It was stipulated between the parties on the trial that appellant had collected up to June 30, 1895, $198 interest of $2,200 worth of bonds. The receipt inclosed in the letter of March 27, 1894, provided that appellee should collect the interest on the bonds and apply it on the notes, and there had been no such application of interest. Therefore, appellee's tender of $392, being the balance of the $590 note, after deducting the collected interest, was all that was due appellant under its agreement with appellee, as we interpret that agreement.

We find no error in the giving or refusal of instuctions.

The judgment will be affirmed.