## HENRIETTA CLEMSON, ADM'X, ETC.,
### v.
## JAVAN TRAMMELL.

*Landlord and Tenant—Buildings Erected on Leasehold to Remain after Expiration of Lease—Destruction of by Fire—Alleged Tortious Act of Tenant—Insured by Tenant's Assignee—Landlord not Entitled to Insurance.*

Where a lease was executed with the provision that the buildings to be erected on the leased land should become the property of the lessor at the expiration of the lease, and prior to the expiration of the lease such buildings were destroyed by fire, it is *held:* That under the lease in question the lessees could not be compelled to restore the buildings; that the buildings having been insured by the assignee of the lessees, the insurance money could not be claimed by the lessor, the said assignee having an insurable interest, and the lease containing no covenant that the buildings should be insured for the benefit of the lessor, and that although the buildings may have been destroyed through the tortious act of one of the lessees, the other lessee was in no way responsible to the landlord for such act.

### [Opinion filed February 4, 1890.]

IN ERROR to the Circuit Court of Saline County; the Hon. ROBERT W. MCCARTNEY, Judge, presiding.

The declaration charges that plaintiff and one C. S. Blackman rented to George G. Morris and James J. Clemson certain lands for which a lease was executed on the 4th day of October, 1878, the premises to be held until the 4th day of October, 1888, for the purpose of erecting thereon a stave and heading factory, and that in consideration of the leased premises the lessees agreed with the lessor " to put up a stave and heading factory and to operate the same, and at the expiration of said lease to leave all the buildings that have been erected on said leased land or pay all the taxes on whatever land they use pending the existence of this lease." It was further averred that on the 10th day of November, 1878, the defendants went into possession of the real estate so leased, and used, possessed and enjoyed the same for the purpose of a stave and

heading factory until the business was abandoned, and that they erected divers buildings thereon of the value of $1,500, and that on the 8th day of November, 1885, the stave and heading business was abandoned and the possession of the premises abandoned to the plaintiff; that before the abandonment of the stave and heading business, Blackman, by his deed, without reservation, conveyed to the plaintiff all his interest in the real estate before the stave and heading business was abandoned, yet the defendants did not leave the buildings erected for the stave and heading business upon the premises, but negligently and wrongfully suffered the same to be destroyed by fire before the premises were abandoned, and that although defendant had received insurance on said buildings he had not paid the same to the plaintiff, or any part thereof, or paid any rent for the use of said premises. There are also the common counts. Verdict and judgment for plaintiff for $500.

Messrs. GREEN & GILBERT, for plaintiff in error.

Mr. W. H. BOYER, for defendant in error.

PHILLIPS, J.   The evidence in this case discloses the execution of a lease by plaintiff and Blackman to Morris and Clemson. After the execution of that lease Morris and Clemson erected a stave and heading factory and commenced to operate the same on the premises in the lease described. After the business was commenced, the Stonefort Stave and Heading Factory was incorporated, of which Clemson was president, and George G. Morris, secretary; the stock of such incorporated company was all paid up. After the Stonefort incorporated company commenced business, the buildings with the machinery and material therein were insured, and on the 8th day of November, 1885, the buildings were destroyed by fire. At the time of such destruction of the property by fire, the Stonefort Stave and Heading Factory had an insurable interest therein, and in protecting that insurable interest by insurance they did not insure for the

benefit of the lessor or his grantees. The lessor and his grantees, by virtue of the terms of the lease, were entitled to have all buildings erected on the premises for the use of the stave and heading factory left on the premises at the expiration of the lease, or if the premises were abandoned, and when so left, the same to be in payment of rent during the term of the lease.

The lessor and his grantees, therefore, had also an insurable interest in the premises. There was nothing in the terms of the lease that required the lessees to insure for the benefit of the lessor, the buildings so erected. Buildings having been destroyed by fire on the 8th day of November, 1885, and the Stonefort Stave and Heading Factory having received insurance thereon to the amount of about $700 on the buildings, said sum of insurance money so received was applied in payment and extinguishment of the indebtedness of the Stonefort Stave and Heading Factory, that company being largely indebted. No part of the insurance money so received on the buildings or machinery was divided between or received by the stockholders of the Stonefort, Stave and Heading Factory. Under the averment of the declaration it was sought to be shown that Morris, the secretary of the company, had caused fire to be set to the buildings and purposely caused their destruction, and it is sought to hold Clemson, his co-lessee, liable therefor, Morris having died before this trial. It does not appear from the evidence that this defendant Clemson ever received any part of the insurance money, and the claim sought to be enforced being on the contract liability under and by virtue of the terms of the lease, there being no provision in the contract by which the lessees were to have the buildings insured for the benefit of the lessor, and there being no promise to replace or repair buildings destroyed or injured by fire, it can not be held that the terms of the contract provided that all buildings that might be at any time erected should be kept in repair and if destroyed restored as they existed at any time during the lease. There is, by the terms of this contract, no liability on the part of the lessees to restore buildings destroyed by fire. It is, however, insisted, that

Clemson v. Trammell.

inasmuch as the averment is that the lessees negligently and wrongfully suffered the buildings to be burned, that Clemson was thereby liable. Even to admit all that is claimed under the evidence, and that is sought to be shown against Morris as having caused fire to be set, still Morris and Clemson were by the terms of the contract but tenants in common in the lease-hold estate at the time the lease was executed.

There is no evidence in the record showing the conveyance by Morris and Clemson to the Stonefort Stave and Heading Factory, yet it sufficiently appears from this record that the possession of the premises at the time of the destruction was in the corporation, the Stonefort Stave and Heading Factory. Yet, whether that fact appears from the evidence or not, Clemson can not be held to be responsible for the tortious act of Morris, not done in the discharge of any duty in con-nection with the business in which they were engaged, or for the purpose for which the lease was made, and whether they were partners or tenants in common would not create a liability against Clemson for any tortious conduct of Morris. Durant v. Rogers, 71 Ill. 124; Gilbert v. Emmons, 42 Ill. 146; Schwabacker et al. v. Ridd'e, 84 Ill. 517.

That under the averment of the special count of the dec-laration there is no evidence in this record to show that Clemson had any knowledge of the fact that the building was other than accidentally destroyed, or even suspected it was other than accidentally destroyed until such fact was sought to be shown on the trial; that it must be held there is no evi-dence in this record in any manner connecting Clemson as aiding, abetting, assisting, consenting or having any knowl-edge of an intended destruction of the property, and in the absence of such evidence the verdict can not be sustained under the special count. But it is insisted that a recovery may be sustained under the common counts, as a part of the insurance money was paid to the Alexander County Bank, which held a note of the Stonefort Stave and Heading Factory Company, and in which Clemson was a partner. The note owing to that bank was a note made by the Stonefort Stave and Heading Factory, and signed by Clemson as president,

and Morris as secretary, of that company. Such note was given as evidence of a debt due from that company to the bank, and when the insurance money was collected it was never received by the president of the company, but paid directly to the bank to the extent of $500 in satisfaction of that note, and only by reason of the fact of his being a partner in that bank is it claimed that Clemson received any benefit from the insurance. There is an entire absence of evidence showing what his interest in the bank was. But, however that fact may be, the money received for insurance was on the insurable interest of the Stonefort Stave and Heading Company and paid out on the debts of that corporation and can not be held to have been received for the use of plaintiff. There is no sufficient evidence in the record to sustain the verdict. The verdict is against the law and the evidence and the judgment must be reversed and the cause remanded.

*Reversed and remanded.*