Jack Gray, Plaintiff-Appellant, *v.* Great Central Insurance Company of Peoria, Illinois, Defendant-Appellee.

(No. 55198;

First District—April 25, 1972.

James C. Serkland, of Chicago, (H. Stephen Hall, of counsel,) for appellant.

Lloyd P. Douglas, of Chicago, (Gerald M. Chapman, of counsel,) for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

This is an action by the proprietor of a service station against his insurer to recover for losses sustained when merchandise and cash were removed from the premises by burglars. The station, a single structure, consisted of two offices, a storage area, a work area and two restrooms. The restrooms abutted the south wall of the station and each had an outside door. Access to the restrooms could be gained only through the doors on the outside of the building. On the evening of April 30, 1968, a burglary occurred on the premises and, when discovered, the door to the women's restroom was found unlocked. Entry to the building had been gained by punching a hole through the wall separating the women's restroom from the storage area. There were no visible marks of forcible entry on either side of the restroom door.

The cause was tried by a jury and a verdict for plaintiff was returned. Defendant subsequently filed a post-trial motion to vacate the judgment contending that the loss sustained was not one which was covered by the policy. Defendant relied upon the following clause in the policy of insurance:

"11. BURGLARY.

The word 'burglary' means a felonious extraction of insured property from within the business premises by a person making felonious entry therein by actual force and violence as evidenced by visible marks made by tools, explosives, electricity or chemicals upon, or physical damage to, *the exterior of the business premises* at the place of such entry." (Emphasis ours).

Defendant maintained that the claimant's evidence at trial did not show that the required physical marks were found on the exterior of the business premises and, consequently, the loss was one which was not covered by the policy. The motion was granted and judgment was entered accordingly. Plaintiff appeals from that judgment.

*OPINION*

■■ The right of any party to indemnity under an insurance policy is purely a matter of contract, and the parties may, when the contract is

made, limit that liability in any manner that does not violate law or public policy. (*Grand Pacific Hotel Co. v. Michigan Commercial Ins. Co.* (1909), 148 Ill.App. 143, *affirmed* 243 Ill. 110, 90 N.E. 244.) When the parties place a valid limitation upon the coverage in the insurance policy, the plain language of that limitation must be effectuated. (*Carter v. Nehi Beverage Co.* (1946), 329 Ill.App. 329, 68 N.E.2d 622.) In the case at bar, the parties agreed to limit coverage for losses due to burglary to those in which forcible marks of entry are later found on the exterior of the premises. Therefore, unless we find that the language of that provision is ambiguous, the limitation must be given effect.

Plaintiff does not deny that signs of forcible entry were not found on either side of the restroom door. He does contend, however, that the hole in the restroom wall satisfies the requirements of the policy as fairly interpreted. This conclusion is to be drawn from the definition of "burglary" as stated in the policy, and paragraph seven of the policy which defines "business premises." That paragraph provides:

"7. BUSINESS PREMISES.

Business premises means that *interior portion of the building* at the location designated in the Declarations which is occupied by the Assured as stated therein and of any other building (excluding warehouses) located on the same lot, to the extent any such building is occupied solely by the Assured in conducting the business stated in the Declarations." (Emphasis ours).

Plaintiff contends that this definition of business premises encompasses only the "interior portion of the building," but the definition of burglary requires visible marks upon the "exterior of the business premises." Thus, the policy requires exterior marks upon an interior portion of the building. This, it is contended, is an impossibility and constitutes an irreconcilable ambiguity in the language of the policy which, under established rules of construction, should be resolved in favor of the insured. Because defendant should not be allowed to escape liability by utilizing an ambiguous condition which cannot possibly be fulfilled, plaintiff urges that it was error for the court below to enter judgment for the defendant.

■■■ It has long been held in Illinois that the language of insurance policies, and contracts in general, is to be understood and applied in its most commonly accepted sense, (*Canadian Radium & Uranium Corp. v. Indemnity Ins. Co. of North America* (1952), 411 Ill. 325, 104 N.E.2d 250), and, if the words used are plain on their face when given the meanings ordinarily imported in common speech, they should not be given a technical connotation which would pervert their meaning. (*Howard v. Aetna Life Insurance Co.* (1946), 329 Ill.App. 248, 67 N.E.2d 878.) If a clear intent is evident from a reading of the policy by

one not actively seeking ambiguity, then that intent should not be changed by construction. (*Langvin v. Rockford Life Insurance Co.* (1949), 338 Ill.App. 499, 88 N.E.2d 111.) Thus, unless we can fairly say that plaintiff's interpretation of the language of this policy utilizes its words in their most commonly accepted sense, the judgment of the court below should not be disturbed.

■■ We do not believe that the parties to this insurance policy understood the division between "interior" and "exterior" in the purely geometric sense which plaintiff urges. At the basis of his argument is the understanding that the division between the two extremes is a plane, *i.e.*, a flat surface having no thickness. If such a premise were accepted, the entire limitation in the policy would be rendered ineffectual since there could never be any proof of marks upon such a surface. We cannot assume that the parties intended such a result. Instead, we believe that the parties, at the time the contract was executed, understood the interior of the premises to mean the inside of the building, the exterior of the premises to mean the outside of the building, and the division between the two extremes. It is in this manner that such terms are normally understood in the conduct of our daily affairs. This view is supported in *Julian Foundry Co. v. Fidelity & Cas. Co. of New York* (1955), 4 Ill.App.2d 301, 124 N.E.2d 48. There the insurer attempted to escape liability under a similar limitation requiring physical marks upon the exterior of the premises where the only marks that appeared were upon the *inside* of the fence encircling the property. The court decided that the word "exterior" should be construed to include any part of that external barrier and that the marks on the inside of the fence were therefore sufficient to satisfy the policy limitation. Thus it was held that the division between "interior" and "exterior" is not commonly understood to be so restrictive as to encompass only the outside surface of the barrier.

In the case at bar, there was no evidence of marks on either side of the door. The only physical damage was to the inside walls of the restroom, and we do not believe that those walls can be construed as part of the exterior of the premises.

■■ We therefore hold that the evidence adduced at trial did not satisfy the requirements of the limitation in the policy and the trial judge was correct in entering judgment for defendant.

Judgment affirmed.

SCHWARTZ and LEIGHTON, JJ., concur.